# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STEPHEN C. FELLS,<br><br>              Plaintiff,<br><br>v.<br><br>DIVISION OF VOCATIONAL REHABILITATION, LEA COLLINS WORACHEK, and PAMELA ZIEGLER,<br><br>              Defendants. | Case No. 17-CV-723-JPS<br><br>**ORDER** |

**1.     INTRODUCTION**

The plaintiff, Stephen C. Fells, ("Fells"), who proceeds in this matter *pro se,* challenges the decision by the Wisconsin Department of Workforce Development's Division of Vocational Rehabilitation ("DVR") to close his file and discontinue services he had received under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*. Fells also named as defendants Pamela Ziegler ("Ziegler"), his vocational rehabilitation counselor, and her supervisor, Lea Collins-Worachek ("Collins-Worachek").[1]

On February 5, 2018, Fells filed a one-page motion for summary judgment, devoid of legal argument and unaccompanied by any proposed findings of fact or citations to evidence. (Docket #21). He subsequently filed a series of additional one-page documents, purporting to supplement his summary judgement motion, that also contain no relevant argument or evidence. (Docket #28, #32, #33). On February 8, 2018, the defendants filed

---

[1]The corrected spelling of Collins-Worachek's name is taken from the defendants' summary judgment submissions. *See* (Docket #24).

a motion for summary judgment, along with a supporting brief, proposed findings of fact, and declarations. (Docket #22–#27). On March 1, 2018, Fells filed a brief opposing the defendants' motion for summary judgment. (Docket #29). The defendants replied on March 14, 2018. (Docket #31). For the reasons explained below, Fells' motion for summary judgment will be denied, the defendants' motion will be granted, and this action will be dismissed with prejudice.

2.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

Next, as will become clear later, this case involves review of a decision by an impartial hearing officer of an administrative agency under 29 U.S.C. § 722(c)(5)(J). In such a case, this court reviews *de novo* the legal issues determined by the agency while giving substantial deference to the agency's policy views and factual determinations. *See Wasser v. N.Y. State Office of Voc. & Educ. Servs. for Individuals with Disabilities*, 602 F.3d 476, 477 (2d Cir. 2010) (per curiam); *Schmidt v. Div. of Vocational Rehab. WDA Milwaukee Cty.*, No. 10-C-1019, 2012 WL 462954, at *3 (E.D. Wis. Feb. 13, 2012), *aff'd sub nom. Schmidt v. Wis. Div. of Vocational Rehab.*, 502 F. App'x

612 (7th Cir. 2013); *Yochim v. Gargano*, 882 F. Supp. 2d 1068, 1077 (S.D. Ind. 2012). The court makes its determination based upon a preponderance of the evidence. *Yochim*, 882 F. Supp. 2d at 1078 (citations omitted).

3. **FACTUAL BACKGROUND**

    3.1 **Plaintiff's Failure to Dispute Defendants' Proposed Facts**

The relevant facts are undisputed because Fells failed to dispute them. Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper summary judgment submission. In the defendants' motion for summary judgment, they warned Fells about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #22 at 1–2). They also provided Fells with copies of those Rules along with their motion. *Id.* at 3–12.

In connection with their motion, the defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #26). It contained short, numbered paragraphs concisely stating those facts they proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

As the party opposing the defendants' motion, Fells was required to file "a concise response to the moving part[ies'] statement of facts" containing "a reproduction of each numbered paragraph in the moving part[ies'] statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]" Civ. L. R. 56(b)(2)(B).

Fells did not do this. His opposition brief does contain some factual assertions. For example, DVR "set [him] up for failure," DVR may have hypnotized him, DVR "never attempted to fully help develop a complete

plan," DVR "acted out of meanness," and DVR "would not let [him] apply for self employment." (Docket #29 at 4, 8, 9). But Fells did not provide any relevant evidence to support these assertions. Nor did he provide a response to the defendants' proposed facts.

Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. The effect of Fells' failure is that, for the purpose of deciding summary judgment, the defendants' uncontroverted statements of material fact are deemed admitted. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *see also Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 607–08 (7th Cir. 2008) ("[A] district court is entitled to demand strict compliance with [the local] rules for responding to a motion for summary judgment, and . . . a court does not abuse its discretion when it opts to disregard facts presented in a manner inconsistent with the rules.") (citation omitted); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

### 3.2 Background on the DVR

Before turning to Fells' interactions with the DVR, the Court will begin by providing brief background details about the DVR and its services.

Under Title I of the Rehabilitation Act, 29 U.S.C. § 720 *et seq.*, states (like Wisconsin) that submit to certain regulatory requirements receive federal funding to provide vocational rehabilitation services to individuals with disabilities. *See Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1247 (7th Cir. 1997). Specifically, states are required to assist eligible individuals "in preparing for, securing, retaining, or regaining an employment outcome that is consistent with the individual's strengths,

resources, priorities, concerns, abilities, capabilities, interests, and informed choice." 34 C.F.R. § 361.48. In Wisconsin, the Rehabilitation Act is administered by DVR within the state's Department of Workforce Development. *See* Wis. Stat. § 47.02.

A central component of the Rehabilitation Act is the requirement that the responsible state agency work with every eligible individual to develop an individualized plan for employment ("IPE"). *See* 34 C.F.R. § 361.45(a)(1). Counselors work with eligible individuals to establish a specific "employment outcome" as well as the "nature and scope of vocational rehabilitation services to be included in the IPE." *Id.* § 361.45(b)(1). Services may include, for example, vocational counseling and training in a specific field. *Id.* § 361.48(b). IPEs also contain timelines for achievement of the employment outcome and the terms and conditions of the individualized plan, such as respective responsibilities of the individual and the state in achieving the employment goal. 29 U.S.C. § 722(b)(4)(A), (B), (E).

Finally, the Rehabilitation Act also requires participating states to establish dispute resolution procedures to resolve disputes between eligible individuals and their counselors. *Id.* § 722(c)(1). Wisconsin's administrative appeal procedure, Wis. Admin. Code § DWD 75.01 *et seq.*, involves a hearing, conducted by an impartial hearing officer, at which the individual may submit evidence and testimony in support of his or her position. A party who is unhappy with the hearing officer's decision can seek review of that decision by the DVR administrator. *Id.* § DWD 75.19. Finally, a party aggrieved by a final decision of the DVR may bring a civil action for review of that decision in any state court of competent jurisdiction or in a district

court of the United States of competent jurisdiction without regard to the amount in controversy. 29 U.S.C. § 722(c)(5)(J).

### 3.3. Relevant Facts

All factual discussion is drawn from the defendants' statement of proposed facts, supporting declarations, and exhibits, which include the relevant items from the administrative record. (Docket #23, #24, #26). During all times relevant to this suit, Fells received services from the DVR (a DVR "consumer" in the agency's parlance), Ziegler was his vocational rehabilitation counselor, and Collins-Worachek was the DVR workforce development area director and Ziegler's supervisor.

Prior to the beginning of Fells' DVR case that is the issue of this lawsuit, Fells had two previous cases with DVR in which he pursued self-employment. Both cases were closed unsuccessfully. In the first, which was closed in 2008, DVR learned that Fells was not paying the mortgage or taxes on his business property after DVR had funded Fells for self-employment. In the other case, closed in 2011, Fells' business property fell into foreclosure due to delinquent taxes.

In 2011, DVR revised its procedure for assisting consumers interested in pursuing self-employment, including an additional screening process. The screening process involves the DVR determining whether the consumer has a good credit score, can make a personal financial contribution to his self-employment plan, and has appropriate entrepreneurial skills and qualities.

Around May of 2014, Fells and Ziegler updated Fells' IPE to reflect the job goal of truck driver. Fells' updated employment goal was based on a job search that showed there was high demand for truck drivers in Milwaukee and throughout Wisconsin. DVR paid for Fells' Commercial

Driver's License (CDL) training program, which Fells successfully completed. Fells then signed an updated IPE in early 2015, which included as progress measures completing truck driver training at a company in Indiana and applying for a job with that company. DVR paid for Fells' lodging and transportation for the training and application program. Fells was not offered a job upon the completion of the program.

Thereafter, Fells requested to modify his IPE to reflect the goal of self-employment as a dump truck owner. He contacted Ziegler and Linda Vegoe ("Vegoe") of the Client Assistance Program, a state agency subdivision that is available to consumers when they are dissatisfied with DVR services, and said he was not having much luck with his job search and wanted DVR to purchase two or three dump trucks for him. Vegoe responded and reminded Fells that this would entail self-employment and a business plan, a credit history review, a feasibility study, and labor market review, which is a very intensive process. At Fells' request, Vegoe sent Fells a copy of the agency's self-employment toolkit.

Ziegler continued to encourage Fells to apply for truck driving jobs, putting him in touch with job developers who had trucking job openings to fill. During their interactions, Fells was often disrespectful, unprofessional, and uncooperative with Ziegler. The same was true of Fell's interaction with the job developers with whom Ziegler put Fells in touch.

On May 13, 2015, Vegoe and Ziegler met with Fells at DVR's office. They discussed his strong personality being perceived as abrasive and demanding which led to two job developers not wanting to work with him. Ziegler and Vegoe updated Fells' IPE to include more opportunities to gain experience in truck driving. Fells was not satisfied; he wanted self-employment and a dump truck added to his IPE. Vegoe and Ziegler both

explained that DVR policies had changed drastically and they could not simply include self-employment or a vehicle in an IPE. They explained some of the essential screening requirements of the new self-employment process, including having a high credit score, making a personal financial contribution, and having appropriate entrepreneurial skills and qualities. Ziegler did not support modification of Fells' IPE for self-employment based on his past history with failed businesses that DVR had supported, his previous appeal hearings affirming the denial of self-employment, and Fells' unprofessional behavior.

At the end of the appointment, Fells refused to sign the IPE that included "job search" (as opposed to self-employment) as the employment goal. Ziegler explained if Fells refused to sign his IPE, DVR would not provide any of the services listed in the IPE, including job development and transportation reimbursement. Fells remained adamant about his desire for self-employment. The meeting ended with the understanding that DVR would no longer provide services to Fells.

On May 20, 2015, Fells submitted a request for a hearing on the denial of adding self-employment to his IPE. On July 7, 2015, a hearing was conducted, at which Collins-Worachek represented DVR. Both Fells and Collins-Worachek presented testimony at the hearing. On August 3, 2015, the administrative law judge ("ALJ") issued his decision concluding that DVR appropriately denied Fells' request to amend his IPE to include self-employment as a truck driver. The ALJ noted that Fells had not completed the DVR self-employment toolkit and that Fells' negative financial history in a prior DVR-subsidized business, even without completion of the toolkit, undermined Fells' suitability as a candidate for self-employment.

Ziegler continued working with Fells as his DVR counselor. In early October 2015, Fells again signed an IPE that included an employment goal of searching for a job as a truck driver; it did not include self-employment. Fells was connected with Steve Visocky ("Visocky"), a job developer, who updated Ziegler regularly about the status of Fells' job search. Fells' lack of formal experience was his biggest challenge in getting a semi-truck driving job, and Fells was not interested in a bus driving position or anything that paid less than $10 per hour.

On January 14, 2016, Ziegler received an update from Visocky, who shared his concerns that Fells was not bringing his own leads to their collective efforts, nor was he applying for any jobs on his own. Visocky reported he would provide leads to Fells for various truck driving positions, but most times Fells refused to apply for them because they were not dump truck positions. Visocky specifically asked Fells what he had found on his own, with no response.

The same day, Ziegler and Vegoe received an email from Fells indicating he needed a new job developer, as Visocky was not finding Fells a dump truck driving job. Vegoe responded that the CDL training (for which DVR paid) covers more than just dump truck driving. Vegoe said it was too limiting to just look for dump truck jobs and suggested that they discuss what types of truck driving jobs Fells could pursue.

On February 10, 2016, Ziegler met with Fells and Vegoe. The intended purpose of the meeting was to discuss job development with Fells because Fells was no longer working with Visocky. Indeed, Fells had not been satisfied with any of the job developers with whom he had worked. During the meeting, Fells stated that he wanted DVR to buy him a dump truck. Ziegler asked Fells whether the only reason he kept his case open

with DVR was to try to get a dump truck and he confirmed that was his reason. Ziegler told Fells that no further services would be provided to him because was not following through with his IPE goal of obtaining a job as a truck driver.

On February 29, 2016, Fells emailed Ziegler asking to meet. Ziegler agreed to schedule an appointment to talk about job development and instructed Fells to bring a list of employers that he had identified so that they could use their time to submit applications or otherwise follow up on Fells' leads.

On March 16, 2016, Ziegler met with Fells. They discussed moving ahead with the job search. Ziegler emphasized that DVR would not authorize the purchase of a dump truck or self-employment. Fells agreed. They prepared an amended IPE including: reimbursement for a physical exam, payment of the required sleep study to renew his federal medical card for his CDL, and on-the-job training. The progress measures in the plan would include Fells obtaining and providing Ziegler with information about the sleep study, sending Ziegler confirmation emails after he submitted job applications, and continuing his job search.

Around May 2016, Fells returned the IPE to Ziegler with hand written notes, some of which were unclear to Ziegler, so she could not sign it. Ziegler told Fells that they needed to discuss and agree upon the changes so that they could both sign the plan. On June 10, 2016, Ziegler and Fells discussed the hand-written comments and, after agreeing to some changes, Ziegler emailed Fells a copy of the IPE for his review and signature. Fells signed the new IPE.

On June 27, 2016, Ziegler met with Fells to discuss his job search. Fells said he had not applied to any jobs because he did not have the

requisite experience. Ziegler reminded him that by choosing not to apply for any jobs because of his lack of experience he was passing up many opportunities. During this conversation, Ziegler suggested that he look into other driving positions to gain experience, that he may not land a dump truck driving job immediately, and that he may need to start somewhere else and work up to that position. Fells gave more excuses for his lack of effort in applying for jobs, and then said that because his job search was going nowhere, he would like to "revisit the past" and talk about DVR purchasing him a dump truck and supporting self-employment. Ziegler said that DVR would not support purchase of a dump truck or self-employment and that it was not up for discussion. Fells said he was "formally requesting" a dump truck and self-employment and that he would like a denial letter. On July 18, 2016, Ziegler mailed and emailed a denial letter to Fells regarding his request for purchase of a dump truck. In the following months, Ziegler continued to encourage Fells to apply for entry-level driving positions to build experience.

On September 26, 2016, Fells told Ziegler that he was taking pain medication for a medical issue with his hip, and he felt that an over-the-road truck driving job would not be safe for him because of the medication, the bouncing seats, and long hours sitting. Fells talked about having his own dump truck and being able to get government contracts so he could just drive locally from site to site. Ziegler again reminded him that DVR would not buy him a dump truck and that there were other businesses that could offer local driving jobs. Fells said he was planning to file a discrimination case against DVR because he used to receive services easily but now his requests were being denied.

On November 8, 2016, Ziegler and Fells met again. Fells said he was looking into a position for driving a plow truck in the winter, but that he needed his own truck to do that. Fells continued to talk about his need to have his own dump truck so he could get his own contracts and be able to work. Ziegler made it clear that DVR did not support purchase of a dump truck or self- employment and that they needed to move past this if they were to continue working together. Ziegler printed out a couple job postings for dump truck driving positions that did not require a personal vehicle and provided Fells with those leads.

Fells again asked for the DVR self-employment toolkit. Ziegler reiterated that she would not support self-employment, but she printed out the toolkit and gave it to him. Ziegler expressed her concern that Fells' case was at a standstill. Because he was not considering other driving jobs that did not involve a dump truck and continued to focus on self-employment, there were no DVR services being provided to him at that time. They concluded the meeting with no resolution about how to move forward because they could not reach an agreement about a realistic, appropriate job search.

On December 19, 2016, Fells emailed Ziegler saying he "needs to change IPE to self-employment." On January 18, 2017, Ziegler met with Fells and told him, again, that DVR would not support self-employment. Fells would not agree to drop it, and therefore Ziegler told Fells that he was not making progress in his DVR plan and that DVR would move toward case closure. During the discussion, Fells repeatedly interrupted Ziegler saying things such as, "come on, tell me again that you deny it, tell me again, I want to hear you say it." Ziegler told Fells he needed to leave her office as they had nothing further to discuss.

On January 23, 2017, Ziegler mailed Fells the closure letter. Fells requested a hearing on the case closure, and a hearing was held on May 29. Collins-Worachek represented DVR at the hearing. Fells argued that his case was inappropriately closed because DVR refused to support his requested goal of self-employment. The ALJ noted that his request for self-employment was the issue of previously-decided appeals and would not be re-litigated. The ALJ explained that a consumer's case should be closed when, among other reasons, the consumer fails to cooperate or does not achieve satisfactory progress in a plan for employment. The ALJ concluded that DVR appropriately closed Fells' case due to his refusal to make efforts or progress to meet his job goal as outlined in his IPE.

4.  ANALYSIS

    4.1  Review of DVR's Decisions

Fells now asks that this Court review and reverse DVR's denial of his request for a dump truck, denial of support for self-employment, and ultimate closure of his case. Given the deference owed to the hearing officers' 2015 and 2017 decisions, coupled with the unassailable logic of those decisions, the Court is constrained to find that Fells was properly denied a dump truck to start his own business and his case was properly closed.

Under the Rehabilitation Act, DVR provides services "necessary to assist an individual with a disability in preparing for, securing, retaining, or regaining an employment outcome that is *consistent with the strengths, resources, priorities, concerns, abilities, capabilities*, interests and informed choice of the individual." 29 U.S.C. § 723 (emphasis added). In other words, DVR properly takes into account the consumer's individual circumstances and characteristics when jointly creating an IPE in order to identify a career

path that will set the consumer up for success. The consumer is not, as Fells would have it, the final or exclusive decision-maker with regard to his IPE; Congress instructs that DVR must be a joint participant in the development of an individualized rehabilitation plan.

The Seventh Circuit's decision in *Mallett v. Wisconsin Division of Vocational Rehabilitation*, 248 F.3d 1158 (7th Cir. 2000), is instructive. In that case, Gregory Mallett ("Mallett") sued the DVR, challenging its decision to close his file and discontinue tuition assistance he had received under the Rehabilitation Act. The record showed that the DVR worked with Mallett for months to create a plan that was tailored to his abilities, but that Mallett refused to accept a plan that did not include law school. *Id.* at *3. DVR examiners had diagnosed Mallett with an expressive writing disability, and Mallett's academic history reflected a consistent failure to maintain a 2.0 grade point average and a full 12-credit course load at a Milwaukee technical school and then at the University of Wisconsin-Milwaukee. *Id.* Based on these facts, the court found that "[i]t was not unlawful for the agency to determine, in its discretion, that based on Mallett's paltry scholastic performance, his learning disabilities, and his overall abilities and capabilities that graduate school tuition was not a service that was required." *Id.*; *see also Williams v. Wis. Dep't of Workforce Dev.*, No. 16-CV-830-BBC, 2017 WL 5312218, at *3 (W.D. Wis. Nov. 13, 2017) ("Indeed, plaintiff's suggestion that defendant should have approved payment of more than $100,000 for law school tuition without requiring her to help pay for the costs or to show that she was capable of succeeding borders on frivolous.").

Here, like in *Mallett*, Fells focuses only on his "interests" in pursuing a career of his choice—self-employment as a dump truck driver. But DVR

had several valid reasons to deny Fells' request to change his IPE to self-employment as a dump truck driver and to refuse to purchase a dump truck for him. In Fells' 2015 appeal of Zeigler's refusal to amend Fells' IPE to self-employment, the ALJ found that Fells had not even completed DVR's self-employment toolkit, which is the threshold step required for a DVR consumer to pursue DVR-funded self-employment. (Docket #24-3 at 3–4). Further, Fells had a negative financial history in a prior DVR-subsidized business that resulted in case closure. *Id.* at 4. Finally, Fells repeatedly refused to cooperate with DVR and job development vendors. *Id.* This evidence, unrebutted by Fells both before the ALJ and in this proceeding, was more than sufficient for DVR to refuse to support and fund Fells' pursuit of self-employment as a dump truck driver.

DVR's decision in 2017 to close Fells' case was also supported by several valid reasons. Following DVR's 2015 denial of Fells' request to be a self-employed truck driver, Fells continued to be uncooperative with DVR's attempts to help him secure a job. Fells was unable to work with any of the job developers to which he was assigned due to his aggressive and unprofessional behavior. He continued to request self-employment and a dump truck after those things had been previously denied. After a year of continued requests and denials for self-employment and a dump truck, Ziegler finally warned Fells that if he continued to insist that DVR fund his self-employment as a dump truck driver instead of looking for a truck driving job, his DVR case would be closed. Fells still refused to participate in a job search. Ziegler's decision to then close Fells' case, and the ALJ's decision on appeal not to re-litigate the issue of Fells' self-employment, *see* (Docket #24-4 at 3–4), was entirely proper.

Therefore, DVR is entitled to summary judgment on Fells' Rehabilitation Act claim. Fells' claim against the DVR will be dismissed.

### 4.2 Individual Defendants

Finally, Fells has also named as defendants Ziegler and Collins-Worachek, though he states no basis for claims against them other than the DVR's alleged violation of the Rehabilitation Act, described above. Claims against these women in their official capacities would be redundant of Fells' claim against the DVR. And because the Rehabilitation Act does not provide for individual liability, *see Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015), Fells cannot sue these women in their individual capacities either.

Accordingly, Fells' claims against the individual defendants will be dismissed as well.

### 5. CONCLUSION

On the undisputed facts and evidence in the record, the Court must grant the defendants judgment as a matter of law and dismiss this action with prejudice.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket #21) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #22) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of May, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge